

MICHAEL BAILEY
United States Attorney
District of Arizona

MONICA B. KLAPPER
Assistant U.S. Attorney
Arizona State Bar No. 013755
Monica.Klapper@usdoj.gov

GARY M. RESTAINO
Assistant U.S. Attorney
Arizona State Bar No. 017450
Gary.Restaino@usdoj.gov

Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | No. CR-19-00411-PHX-DJH |
|---|---|
| Plaintiff, | **PLEA AGREEMENT** |
| vs. | |
| Benjamin Lloyd Bunker (002), | |
| Defendant. | |

The United States and Defendant Benjamin Bunker agree to dispose of this matter on the following terms and conditions:

**1.   PLEA**

Defendant will plead guilty to Count 1 of the indictment charging Defendant with conspiracy, in violation of 18 U.S.C. § 371, a class D felony offense.

**2.   MAXIMUM PENALTIES**

a.   A violation of 18 U.S.C. § 371 is punishable by a maximum fine of either $250,000 or two times the pecuniary gain resulting from the offense, a maximum term of imprisonment of 5 years, or both; and a term of supervised release of 3 years. The maximum term of probation is five years.

b. According to the Sentencing Guidelines issued pursuant to the Sentencing Reform Act of 1984, the Court shall order Defendant to:

(1) make restitution to any victim of the offense pursuant to 18 U.S.C. § 3663 and/or 3663A, unless the Court determines that restitution would not be appropriate;

(2) pay a fine pursuant to 18 U.S.C. § 3572, unless the Court finds that a fine is not appropriate;

(3) serve a term of supervised release when required by statute or when a sentence of imprisonment of more than one year is imposed (with the understanding that the Court may impose a term of supervised release in all other cases); and

(4) pay upon conviction a $100 special assessment for each count to which the defendant pleads guilty pursuant to 18 U.S.C. § 3013.

c. The Court is required to consider the Sentencing Guidelines in determining Defendant's sentence. However, the Sentencing Guidelines are advisory, and the Court is free to exercise its discretion to impose any reasonable sentence up to the maximum set by statute for the crime of conviction, unless there are stipulations to the contrary that the Court accepts.

3. **AGREEMENTS REGARDING SENTENCING**

a. Stipulations. Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the United States and Defendant stipulate to the following:

(1) Defendant's sentence shall not exceed the low end of the sentencing range as calculated under U.S.S.G. § 1B1.1(a). This stipulated sentencing cap will not change based on departures considered under U.S.S.G. § 1B1.1(b). Nothing in this agreement precludes Defendant from moving for a downward departure, variance, or sentence below the cap, or prevents the Court from imposing a sentence below the cap.

(2) Defendant shall forfeit any professional licenses or certificates related to the purchase or sale of securities and shall not re-apply for any such licenses or certificates. Additionally, Defendant shall not engage in the purchase or sale of securities

on behalf of third parties.

b. Restitution. Pursuant to 18 U.S.C. § 3663 and/or 3663A, Defendant specifically agrees to pay full restitution, regardless of the resulting loss amount, but in no event more than $311,451, to all victims directly or proximately harmed by Defendant's "relevant conduct," including conduct pertaining to any dismissed counts or uncharged conduct, as defined by U.S.S.G. § 1B1.3, regardless of whether such conduct constitutes an "offense" under 18 U.S.C. §§ 2259, 3663 or 3663A. Defendant understands that such restitution will be included in the Court's Order of Judgment and that an unanticipated restitution amount will not serve as grounds to withdraw Defendant's guilty plea or to withdraw from this plea agreement.

c. Assets and Financial Responsibility. Defendant shall make a full accounting of all assets in which Defendant has any legal or equitable interest. Defendant shall not (and shall not aid or abet any other party to) sell, hide, waste, spend, or transfer any such assets or property before sentencing, without the prior approval of the United States (provided, however, that no prior approval will be required for routine, day-to-day expenditures). Defendant also expressly authorizes the United States Attorney's Office to immediately obtain a credit report as to Defendant in order to evaluate Defendant's ability to satisfy any financial obligation imposed by the Court. Defendant also shall make full disclosure of all current and projected assets to the U.S. Probation Office immediately and prior to the termination of Defendant's supervised release or probation, such disclosures to be shared with the U.S. Attorney's Office, including the Financial Litigation Unit, for any purpose. Finally, Defendant shall participate in the Inmate Financial Responsibility Program to fulfill all financial obligations due and owing under this agreement and the law.

d. Acceptance of Responsibility. If Defendant makes full and complete disclosure to the U.S. Probation Office of the circumstances surrounding Defendant's commission of the offense, and if Defendant demonstrates an acceptance of responsibility for this offense up to and including the time of sentencing, the United States will recommend a two-level reduction in the applicable Sentencing Guidelines offense level

pursuant to U.S.S.G. § 3E1.1(a). If Defendant has an offense level of 16 or more, the United States will move the Court for an additional one-level reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G. § 3E1.1(b).

**4.     AGREEMENT TO DISMISS OR NOT TO PROSECUTE**

   a.   Pursuant to Fed. R. Crim. P. 11(c)(1)(A), the United States, at the time of sentencing, shall dismiss the remaining counts in the indictment.

   b.   This agreement does not, in any manner, restrict the actions of the United States in any other district or bind any other United States Attorney's Office.

**5.     COURT APPROVAL REQUIRED; REINSTITUTION OF PROSECUTION**

   a.   If the Court, after reviewing this plea agreement, concludes that any provision contained herein is inappropriate, it may reject the plea agreement and give Defendant the opportunity to withdraw the guilty plea in accordance with Fed. R. Crim. P. 11(c)(5).

   b.   If Defendant's guilty plea or plea agreement is rejected, withdrawn, vacated, or reversed at any time, this agreement shall be null and void, the United States shall be free to prosecute Defendant for all crimes of which it then has knowledge and any charges that have been dismissed because of this plea agreement shall automatically be reinstated. In such event, Defendant waives any and all objections, motions, and defenses based upon the statute of limitations, the Speedy Trial Act, or constitutional restrictions in bringing later charges or proceedings. Defendant understands that any statements made at the time of Defendant's change of plea or sentencing may be used against Defendant in any subsequent hearing, trial, or proceeding subject to the limitations of Fed. R. Evid. 410.

**6.     WAIVER OF DEFENSES AND APPEAL RIGHTS**

   Defendant waives: (1) any and all motions, defenses, probable cause determinations, and objections that Defendant could assert to the indictment or information; and (2) any right to file an appeal, any collateral attack, and any other writ or motion that challenges the conviction, an order of restitution or forfeiture, the entry of judgment against Defendant, or any aspect of Defendant's sentence, including the manner in which the

sentence is determined, including but not limited to any appeals under 18 U.S.C. § 3742 (sentencing appeals) and motions under 28 U.S.C. §§ 2241 and 2255 (habeas petitions), and any right to file a motion for modification of sentence, including under 18 U.S.C. § 3582(c). This waiver shall result in the dismissal of any appeal, collateral attack, or other motion Defendant might file challenging the conviction, order of restitution or forfeiture, or sentence in this case. This waiver shall not be construed to bar an otherwise-preserved claim of ineffective assistance of counsel or of "prosecutorial misconduct" (as that term is defined by Section II.B of Ariz. Ethics Op. 15-01 (2015)).

7. **DISCLOSURE OF INFORMATION**

a. The United States retains the unrestricted right to provide information and make any and all statements it deems appropriate to the U.S. Probation Office and to the Court in connection with the case.

b. Any information, statements, documents, and evidence that Defendant provides to the United States pursuant to this agreement may be used against Defendant at any time.

c. Defendant shall cooperate fully with the U.S. Probation Office. Such cooperation shall include providing complete and truthful responses to questions posed by the U.S. Probation Office including, but not limited to, questions relating to:

(1) criminal convictions, history of drug abuse, and mental illness; and

(2) financial information, including present financial assets or liabilities that relate to the ability of the defendant to pay a fine or restitution.

8. **FORFEITURE, CIVIL, AND ADMINISTRATIVE PROCEEDINGS**

Nothing in this agreement shall be construed to protect Defendant from administrative or civil forfeiture proceedings or prohibit the United States from proceeding with and/or initiating an action for civil forfeiture. Pursuant to 18 U.S.C. § 3613, all monetary penalties, including restitution imposed by the Court, shall be due immediately upon judgment, shall be subject to immediate enforcement by the United States, and shall be submitted to the Treasury Offset Program so that any federal payment or transfer of

returned property Defendant receives may be offset and applied to federal debts (which offset will not affect the periodic payment schedule). If the Court imposes a schedule of payments, the schedule of payments shall be merely a schedule of minimum payments and shall not limit the methods available to the United States to enforce the judgment.

9. **ELEMENTS**

**Conspiracy**
**18 U.S.C. § 371**

Between about October of 2014 and May of 2017, in the District of Arizona and elsewhere:

1. There was an agreement between two or more persons to commit the crime of securities fraud, in violation of 15 U.S.C. § 78j(b) & 17 C.F.R. § 240-10b-5;

2. Defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and

3. One of the members of the conspiracy performed at least one overt act in furtherance of the conspiracy.

**Securities Fraud**
**15 U.S.C. 78j(b) & 17 C.F.R. § 240-10b-5**

Between about October of 2014 and May of 2017, in the District of Arizona and elsewhere:

1. Defendant or a co-conspirator acted in connection with the purchase or sale of a security;

2. Defendant or a co-conspirator employed a device, scheme, or artifice to defraud, made untrue statements about or omitted a material fact, or engaged in a practice that operated as a fraud;

3. Defendant acted knowingly, willfully, and with the intent to defraud; and

4. Defendant or a co-conspirator made use of or caused the use of any means or instrumentality of interstate commerce, the mails, or a national securities exchange.

10. **FACTUAL BASIS**

a. Defendant admits that the following facts are true and that, if this matter were

to proceed to trial, the United States could prove the following facts beyond a reasonable doubt:

Between about October of 2014 and May of 2017, I participated in a debt-conversion securities fraud involving Greenway Design Group, Inc. (GDGI), along with Defendant Loflin, J.K., and others. I knew that GDGI was controlled by Defendant Loflin and J.K., and that it was held in the name of various nominees to disguise that control. I also knew that Defendant Loflin and J.K. were having stock issued to them by GDGI with an "unrestricted" legend, in violation of securities laws and regulations, and then were selling the stock via OTC Market Group Inc. (OTCMGI). I assisted Defendant Loflin and J.K. in the debt conversion process by providing, among other things: (1) the necessary annual letters to keep GDGI's registration with OTCMGI current, and (2) the necessary opinion letters attesting that each specific debt conversion satisfied the relevant securities regulations that allowed the stock to be issued without restriction. The letters I provided and opinions I rendered contained information that I knew was materially false and/or purposefully omitted material information.

For example, on October 13, 2014, I authored an annual letter to OTCMGI containing statements that I knew were materially false and misleading, including that: 1) I served as "regular securities counsel" to GDGI; 2) I had examined GDGI's corporate minutes and actions, certificate of incorporation, bylaws, and other related documents; 3) I had "personally met with" management and the board of directors, and "personally discussed" the annual financial statement with them; and (4) the financial statement was prepared under the supervision of GDGI's "president," who was a person with "substantial experience." Attached to the letter was an annual statement, which I knew contained many similar material misrepresentations, such as: 1) that GDGI was currently in the business of residential and commercial air-conditioning technology; 2) that GDGI's named owner and president, B.L., controlled GDGI's operations; and 3) that B.L. certified GDGI's financial statements. I knew that GDGI had no real business activity, was not controlled by its nominee management, and was being used by Defendant Loflin and J.K. to convert

debt into unrestricted stock shares to sell for a profit.

Similarly, on March 9, 2015, I authored opinion letters to a stock transfer agent, West Coast Stock Transfer, Inc., containing statements and attachments that I knew were materially false and misleading, including that: (1) Defendant Loflin and J.K. were not "affiliates" of GDGI (meaning that they did not control GDGI); 2) GDGI was not a shell company; and 3) Defendant Loflin and J.K. were not acting in concert with any other individuals or entities. Attached to each opinion letter was, among other things, a declaration from either Defendant Loflin or J.K. attesting to facts that I knew were false, such as that neither was an affiliate of GDGI. These statements or omissions were made so the resulting stock certificates could be issued with an "unrestricted" legend and could be sold via OTCMGI. I authored many such annual letters and opinion letters for GDGI during the time period at issue.

b.  Defendant swears under oath to the accuracy of this statement and, if Defendant should be called upon to testify about this matter in the future, any intentional material inconsistencies in Defendant's testimony may subject Defendant to additional penalties for perjury or false swearing, which may be enforced by the United States under this agreement.

## APPROVAL AND ACCEPTANCE OF DEFENDANT

I have discussed the case and my constitutional and other rights with my attorney. I understand that by entering my plea of guilty I shall waive my rights to plead not guilty, to trial by jury, to confront, cross-examine, and compel the attendance of witnesses, to present evidence in my defense, to remain silent and refuse to be a witness against myself by asserting my privilege against self-incrimination, all with the assistance of counsel, and to be presumed innocent until proven guilty beyond a reasonable doubt.

I agree to enter my guilty plea as indicated above on the terms and conditions set forth in this agreement.

I have been advised by my attorney of the nature of the charges to which I am entering my guilty plea. I have further been advised by my attorney of the nature and range

of the possible sentence and that my ultimate sentence shall be determined by the Court after consideration of the advisory Sentencing Guidelines.

My guilty plea is not the result of force, threats, assurances, or promises, other than the promises contained in this agreement. I voluntarily agree to the provisions of this agreement and I agree to be bound according to its provisions.

I understand that if I am granted probation or placed on supervised release by the Court, the terms and conditions of such probation/supervised release are subject to modification at any time. I further understand that if I violate any of the conditions of my probation/supervised release, my probation/supervised release may be revoked and upon such revocation, notwithstanding any other provision of this agreement, I may be required to serve a term of imprisonment or my sentence otherwise may be altered.

This written plea agreement, and any written addenda filed as attachments to this plea agreement, contain all the terms and conditions of the plea. Any additional agreements, if any such agreements exist, shall be recorded in a separate document and may be filed with the Court under seal; accordingly, additional agreements, if any, may not be in the public record.

I further agree that promises, including any predictions as to the Sentencing Guideline range or to any Sentencing Guideline factors that will apply, made by anyone (including my attorney) that are not contained within this written plea agreement, are null and void and have no force and effect.

I am satisfied that my defense attorney has represented me in a competent manner.

I fully understand the terms and conditions of this plea agreement. I am not now using or under the influence of any drug, medication, liquor, or other intoxicant or depressant that would impair my ability to fully understand the terms and conditions of this plea agreement.

_1/22/2020_
Date

_[signature]_
Benjamin Lloyd Bunker
Defendant

**APPROVAL OF DEFENSE COUNSEL**

I have discussed this case and the plea agreement with my client in detail and have advised the defendant of all matters within the scope of Fed. R. Crim. P. 11, the constitutional and other rights of an accused, the factual basis for and the nature of the offense to which the guilty plea will be entered, possible defenses, and the consequences of the guilty plea including the maximum statutory sentence possible. I have further discussed the concept of the advisory Sentencing Guidelines with Defendant. No assurances, promises, or representations have been given to me or to the defendant by the United States or any of its representatives that are not contained in this written agreement. I concur in the entry of the plea as indicated above and that the terms and conditions set forth in this agreement are in the best interests of my client. I agree to make a bona fide effort to ensure that the guilty plea is entered in accordance with all the requirements of Fed. R. Crim. P. 11.

1/22/2020
Date

James Sun Park
Attorney for Defendant

**APPROVAL OF THE UNITED STATES**

I have reviewed this matter and the plea agreement. I agree on behalf of the United States that the terms and conditions set forth herein are appropriate and are in the best interests of justice.

MICHAEL BAILEY
United States Attorney
District of Arizona

1/22/2020
Date

Monica B. Klapper
Gary M. Restaino
Assistant U.S. Attorneys

**ACCEPTANCE BY THE COURT**

_____
Date

Honorable Diane J. Humetewa
United States District Judge

- 10 -